UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELEN F. TYLER,

      Plaintiff,                    Civil Action No. 18-13532

          v.                  District Judge JUDITH E. LEVY
                                   Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Helen F. Tyler ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

## I.  PROCEDURAL HISTORY

On April 9, 2015,  Plaintiff applied for DIB and SSI, alleging disability as of November 22, 2014 (Tr. 165, 172).  Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on March 23, 2017 in Orange, California (Tr. 48). Sean McKee, Administrative Law Judge ("ALJ") presided.  Plaintiff, represented by attorney John Miller, testified by teleconference from Mt. Pleasant, Michigan (Tr. 55-69).  Vocational Expert ("VE") Susan Rowe also testified (Tr.69-77).  On April 13, 2017, ALJ McKee found Plaintiff not disabled (Tr. 25-37).  On September 5, 2018, the Appeals Council denied review of the administrative decision (Tr. 5-8).  Plaintiff filed suit in this Court on November 5, 2018.

## II. BACKGROUND FACTS

Plaintiff, born November 8, 1964, was 52 when ALJ McKee issued his decision (Tr. 37, 165).  She completed one year of college and received a private investigator's license (Tr. 219).  She worked previously as a cashier and sandwich maker (Tr. 220).  She alleges disability due to heart attacks, hypertension, peripheral artery disease, migraines, pericarditis, hirsutism, cardiovascular disease, blackouts, vitamin D deficiency, and liver disease[1] (Tr. 218).

---

[1]

Hirsutism is a condition in women characterized by "excessive growth of dark or coarse hair in a male-like pattern — face, chest and back.  https://www.mayoclinic.org /diseases -conditions/hirsutism/symptoms-causes/syc-20354935.  (Last visited January 1, 2020).

### A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced the testimony by noting that his client experienced spine, neck, and left knee problems; a transient ischemic accident two year earlier; current left-side weakness; several heart attacks "quite a few years" earlier; chest pain; migraines; headaches; peripheral artery disease; degenerative disc disease, and a possible diagnosis of rheumatoid arthritis* (Tr. 54-55).

Plaintiff then offered the following testimony.

She currently lived in Prudenville, Michigan (Tr. 55).  She stood between 5' 4" and 5' 5" and weighed 193 pounds (Tr. 56).  Two years before the hearing, she received a conditional offer to work at a courthouse which was withdrawn due to her past history as a prison guard (Tr. 56).  She subsequently had a stroke and was physically unable to work (Tr. 56).

Plaintiff last worked full time at an Arby's restaurant (Tr. 56).  Her past relevant work also included a job as a security officer, which required her to lift up to 35 pounds and to walk or stand 95 percent of the work shift (Tr. 58-60).

She was prescribed a cane two years before the hearing following a transient ischemic attack ("TIA")[2] (Tr. 61).  She used the cane "all the time" to prevent falls (Tr. 61-62).  She

---

[2]A TIA "is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage." https://www.mayoclinic.org/diseases-conditions/ transient-ischemic-attack/symptoms-causes/syc-20355679.  (Last visited January 1, 2020).

experienced daily neck and back pain (Tr. 62). She relieved her pain by sitting in a rocking chair or lounger (Tr. 62). Due to back pain she was required to sit every 15 minutes (Tr. 62). Due to the TIA, she was unable to keep track of the hour, day, or week and had to "write everything down" (Tr. 63). She also experienced constant headaches (Tr. 63). She received temporary relief from the headaches with prescribed pain medication (Tr. 63). She coped with the headaches by napping in a dark room for an hour every day (Tr. 64). She experienced chest pain from moving and breathing and experienced peritonitis once a year (Tr. 64). The condition caused heart pain (Tr. 65). She also experienced grasping limitations after shattering her right wrist two years earlier (Tr. 65). As a result of gastroesophageal reflux disease ("GERD"), she experienced the symptom of vomiting on a weekly basis (Tr. 66). She saw a therapist for depression but refrained from taking the recommended psychotropic medication (Tr. 66). She was not taking pain medication at the time of hearing due to kidney problems (Tr. 66). She became dizzy after climbing stairs (Tr. 66). Due to fatigue she required daily naps (Tr. 67). She injured her left knee two weeks before the hearing and now experienced pain and swelling (Tr. 67). She elevated her knee as often as once an hour (Tr. 67). She experienced sinusitis in the winter and experienced headaches and migraines related to the condition (Tr. 68). She also experienced swollen ankles and left hand tremors (Tr. 68). As a result of a head injury, her left-sided hearing was "a little off" but she did not use a hearing aid (Tr. 68-69).

-4-

### B.      Medical Evidence

### 1.  Treating Sources

On November 22, 2014, Plaintiff sought emergency treatment for chest discomfort, noting a history of heart attacks as recently as 11 years earlier (Tr. 396). She was treated for hypertension (Tr. 396). Blood testing was negative for myocardial infarction (Tr. 397). Ejection fraction readings were normal (Tr. 417). A November 24, 2014 heart catheterization showed no coronary artery disease (Tr. 399). Discharge records note "apparent metabolic syndrome" (Tr. 390).

January, 2015 records note mildly elevated blood pressure readings (Tr. 414). In February, 2015, Plaintiff sought emergency treatment for left side weakness (Tr. 374, 377). Sheri Fox, PAC, working under the direction of James R. MacKenzie, M.D., stated that an examination suggested "malingering and not a true conversion disorder" (Tr. 377). Discharge records also note a likely "non-physiologic source" and "inconsistent behavior" (Tr. 364, 472). A February, 2015 CT scan and MRI of the brain showed unremarkable results (Tr. 383, 386). A carotid Doppler examination and chest x-ray were also normal (Tr. 382, 385, 471). An ECG showed "marked" sinus bradycardia (slowed heartbeat) (Tr. 484). Speech therapy records note that Plaintiff's speech was hesitant during "structured" evaluation but "rapid and fluent" when asked to describe her former life in California (Tr. 492). Physical therapy records note that "[s]trength and sensory deficits" were "not consistent with functional mobility presentation" (Tr. 496). Plaintiff reported that she wanted

"'partial disability'" so she could "'cover her bills and work part-time'" (Tr. 502).   The same month, she reported good results from water therapy (Tr. 359).

March, 2015 imaging studies note that Plaintiff sustained a right wrist fracture after falling  on a dance floor (Tr. 328-329, 466).   She underwent wrist surgery the same month without complications (Tr. 321).   March, 2015 medical records note questions regarding the "validity of [Plaintiff's] response" to muscle testing (Tr. 355).   She exhibited a normal gait, mood, judgment, affect, and memory (Tr. 565).   May, 2015 records by Elizabeth S. Elliot, D.O. note Plaintiff's report that she did not require pain medication for the wrist fracture (Tr. 428).   Plaintiff noted that for the past several days, she experienced symptoms of depression, but denied suicidal ideation (Tr. 431).   She reported a suicide attempt as a teenager but denied current counseling or use of psychotropic medication (Tr. 431).

In July, 2015, Plaintiff denied cardiac-related symptoms aside from intermittent chest discomfort of lessening frequency (Tr. 448-449, 451).    Hypertension was deemed "adequately controlled" (Tr. 448).   Records from the following month and August, 2015 note a stable gait (Tr. 556, 559).   In October, 2015 Plaintiff reported good results from medication for migraine headaches (Tr. 551).    October and November, 2015 records note no complications from lipoma removal surgery (Tr. 526-527, 530).

February, 2016 records state that Plaintiff was well-appearing with a normal gait and station (Tr. 548-549).   In May, 2016, she reported good results from migraine medication, but expressed interest in "preventative medication" (Tr. 544).   Gait and station were normal

(Tr. 545).  In August, 2016, she reported that her chronic conditions were stable (Tr. 541).

In February, 2017, Plaintiff denied symptoms of depression but reported bilateral leg pain (Tr. 538).  She was encouraged to begin a walking program (Tr. 582).  Her chest discomfort was attributed to "musculoskeletal etiology" (Tr. 582).  Hypertension was deemed adequately controlled (Tr. 582).  Imaging studies showed mild valve regurgitation but no other abnormalities (Tr. 590).  Imaging studies of the lower extremities were unremarkable (Tr. 587).  The following month, Plaintiff alleged memory loss but denied symptoms of depression (Tr. 585).  The same month, she reported that "slipped discs" and scoliosis had caused recent renewed back pain but that she was not taking anything for the condition (Tr. 599).  A mental status review was unremarkable (Tr. 600).  Imaging studies of the spine showed only mild abnormalities (Tr. 602-605).  The same month, Plaintiff sought urgent treatment for left knee pain but denied cardiac or pulmonary issues (Tr. 607).  Imaging studies of the knee showed mild swelling and mild arthritic changes (Tr. 610).  An undated form states that Plaintiff was eligible for reduced bus fare due to the need for a cane (Tr. 612-613).  Physical therapy records from March, 2017 note Plaintiff's report of level "eight" out of "ten" pain of the left knee and cervical, thoracic, and lumbar spine (Tr. 615).  She reported that she was able to engage in a home exercise program (Tr. 617).  She demonstrated range of motion limitation of the lumbar spine but normal ranges of motion in the bilateral upper and lower extremities (Tr. 616).

### 2.  Non-Treating Sources

In July, 2015, George Starret, Ed.D. performed a non-examining review the treating and consultative records related to Plaintiff's psychological condition, finding mild limitation in concentration, persistence, or pace but no other psychological limitations (Tr. 83).  The same day, Dale Blum, M.D. performed a non-examining assessment of the records related to Plaintiff's physical condition, finding that she could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 85).  He limited her to occasionally postural activity except for the ability to balance frequently (Tr. 85).  He noted that Plaintiff's exertional abilities were "likely" limited by hypertension and cardiac medication (Tr. 86).

### 3.  Medical Records/Reports of Medical Treatment Post-Dating the April 13, 2017 Administrative Decision

A September 25, 2018 letter by a treating psychiatrist stating that in March 27, 2018, Plaintiff had been diagnosed with major depressive disorder (single episode, moderate) and an unspecified anxiety disorder was submitted for Appeals Council review after the April 13, 2017 administrative determination (Tr. 4).  The letter by Mohammad Jafferany, M.D. states that as of September, 2018, Plaintiff took Lexapro, Seroquel, and Vistaril and received regular medication management (Tr. 4).  Dr. Jafferany composed a letter in December, 2018 stating that Plaintiff's treatment was continuing.

In Plaintiff's July, 2019 letter to the Court (composed in lieu of a summary judgment motion) she states that subsequent to the administrative decision, she had surgery on her left knee and was due to have surgery on the right knee in August, 2019; had been diagnosed with Stage 3 kidney failure; and took medication for anxiety. ECF No. 17, PageID.665.

## C. Vocational Expert Testimony

VE Rowe classified Plaintiff's past relevant work as a security guard as semiskilled and exertionally light[3] (Tr. 71). ALJ McKee then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, work experience:

> [A]ssume an individual . . . who is able to perform light exertional work activities as defined in the regulations with the following limitations. This individual can stand and/or walk for four hours in an eight-hour workday. This individual requires a cane to stand up, stand in place, and for all ambulation. This individual can frequently climb ramps and stairs and can never climb ladders, ropes, or scaffolds. This individual can frequently balance on level surfaces. This individual can frequently stoop, kneel, crouch, and crawl. . . . This individual can never tolerate exposure to workplace hazards such as unprotected heights and moving mechanical parts. This individual can never work outdoors in bright sunshine or with bright or flickering lights as would be experienced with welding or cutting metals. This individual can tolerate no more than loud levels of noise as defined by the

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

*Selected Characteristics of Occupations* [("*SCO*")].  This individual can perform simple, routine tasks. . . . Would the hypothetical individual be able to perform the claimant's past work either as she actually performed the work or as those occupations are generally performed in the national economy?  (Tr. 71-72).

The VE testified that the above limitations would preclude Plaintiff's past work but would allow for the exertionally light, unskilled work of an office helper (45,000 positions in the national economy); counter clerk (20,000); and information clerk (25,000) (Tr. 73).

The VE testified further that if the hypothetical individual were additionally limited to occasional operation of hand and foot controls with the left extremities; the need to sit down for 10 minutes after standing or walking for 60;  occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; frequent handling with the dominant right upper extremity; and moderate levels of noise as defined by the *SCO*, the job numbers would not change (Tr. 74).  The VE stated that her testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*"), *SCO*, and on her professional experience (Tr. 74).  The VE stated that the need to recline for two hours of an eight-hour work shift, be off task 20 percent of the work shift, or, take two or more absences a month would preclude all competitive employment (Tr. 74-75).

In response to questioning by Plaintiff's counsel, the VE testified that "overall," the need to be  off task for more than 10 percent of the workday would be work preclusive and that in some occupations, the need to miss one day of work each month on a consistent basis would be grounds for termination (Tr. 76-77).

### D. The ALJ's Decision

Citing the medical records, ALJ McKee found that between November 22, 2014 and April 13, 2017, Plaintiff experienced the severe impairments of "peripheral arterial disease, ishemic heart disease with or without angina, mitral valve disorder, degenerative disc disease/spine disorder/scoliosis, [TIA], fractured right hand, arthritis in the left knee, obesity, migraines, and coronary artery disease" but that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28-29). He found that the conditions of vitamin D deficiency, hypertension, hyperlipidemia, GERD, back lipoma, and depression were non-severe (Tr. 28). He found that Plaintiff experienced mild limitation in understanding, remembering, or applying information and in concentration, persistence, or pace but no other psychological limitation (Tr. 28-29).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [S]it for six hours in an eight-hour workday. She can stand and/or walk for four hours in an eight-hour workday. She requires a cane to stand up, stand in place, and for all ambulation. She can occasionally operate hand and foot controls with her left extremities. She requires the freedom to sit down for 10 minutes after standing or walking for one hour while remaining on task and at the workstation. She can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds. She can occasionally balance on level surfaces. She can occasionally stoop, kneel, crouch and crawl. She can frequently handle with her dominant right upper extremity. She can never tolerate exposure to workplace hazards such as unprotected heights and moving mechanical parts. She can never work outdoors in bright sunshine or with bright or flickering lights as would be experienced with welding or cutting metals. She can tolerate no more than "moderate" levels of noise as defined by the [*SOC*] (Tr. 31).

Citing the VE's testimony, the ALJ found that Plaintiff was unable to perform her past relevant work, she could work as a office helper, counter clerk, and information clerk  (Tr. 35-37, 73).

The ALJ discounted Plaintiff's allegations of disability (Tr. 33).  He cited March, 2017 x-rays showing only mild arthritic changes (Tr. 33).  He noted that treating sources indicated that Plaintiff could walk without an assistive device and retained a functional range of motion (Tt. 34).  He observed that an x-ray of the left knee showed only mild findings despite Plaintiff's report of lower extremity limitation (Tr. 34).  He noted that an echocardiogram taken in February, 2017 showed mild mitral valve regurgitation (Tr. 34). The ALJ observed that Plaintiff no longer took opiate pain medication (Tr. 34).  He noted that Plaintiff continued to handle financial matters, read, and shop for groceries and clothing (Tr. 35).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*,  800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where  substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

### A.  Substantial Evidence Supports the ALJ's Non-Disability Determination

Plaintiff, proceeding *pro se*, disputes the ALJ's determination that she was not disabled, noting that she has had "several heart attacks" and strokes over the past several years ECF No. 17, PageID.665.

However, the ALJ's conclusion that Plaintiff was capable of a limited range of exertionally light work for the relevant period is well supported and explained (Tr. 31). Without more, Dr. Blum's non-examining July, 2015 assessment constitutes substantial evidence in support of the non-disability determination (Tr. 85-86).  However, the ALJ also drew on the more recent treating records supporting the finding that Plaintiff required the use

-14-

of a cane due to left knee problems beginning two months before the administrative determination (Tr. 31, 607, 610, 612).  Moreover, while the medical evidence shows that Plaintiff's claims of left side paralysis were largely unsupported (and at best, short-lived), the ALJ accorded them partial credit by limiting her to occasional use of the left upper and lower extremities for hand and foot controls[4] (Tr. 31).  As discussed further below, while Plaintiff alleged symptoms of depression for a brief time during the relative period (Tr. 431), she denied subsequent psychological symptoms (Tr. 538, 585).  The ALJ's rationale for the Residual Functional Capacity ("RFC") included an accurate summation of her hospitalizations for cardiac-related conditions, headaches, knee conditions, and the now-alleged psychological limitations (Tr. 32-34).   His explanation complies with the requirements of SSR 96-8p for "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings as well as non-medical evidence, and activities of daily living.  1996 WL 374184 at *7 (July 2, 1996); *see also* 20 C.F.R. §§  404.1545, 416.945.

### B.  The Newer Evidence Does Not Warrant a Remand

Further, the evidence first submitted by Plaintiff to the Appeals Council or during the current action does not provide grounds for remand. *See* **II.B.3***, above.*

---

[4]While Plaintiff reported stroke-like symptoms in February, 2015, multiple treating and one-time sources noted inconsistencies between the reported symptoms and the clinical and imaging evidence (Tr. 364, 374, 377, 383, 386, 492, 496, 502).

Under the sixth sentence of § 405(g), a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff submitted evidence after the administrative decision was issued showing that she received psychiatric treatment from March 27, 2018 through December 3, 2018. However, the evidence of treatment starting almost a year after the administrative decision cannot be interpreted to pertain to her condition on or before the April 13, 2017 administrative decision. Therefore, it is irrelevant to the present application for benefits (Tr. 4). *See Wyatt v. Secretary of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)(*accord Sizemore,* 865 F.2d at 712)("Evidence of a subsequent deterioration or change in condition" following the date of the administrative determination is not "material" to the ALJ's decision).

The records show that at one appointment during the relevant period, Plaintiff reported short-term symptoms of depression (Tr. 431). However, mental status examinations performed before and after that date during the relevant period are wholly unremarkable (Tr.

397, 538, 585, 600).  Assuming that Plaintiff's psychological condition worsened subsequent to the April, 2017 determination and that she believes that the psychological limitations in tandem with her other conditions now renders her disabled, her proper remedy is to file a new application for benefits. *Sizemore* at 711.

Plaintiff's statement that she underwent left knee surgery after the relevant period and was scheduled for right knee surgery in July, 2019 likewise does not provide grounds for remand.  As discussed above, the ALJ credited the allegations of knee limitations by limiting Plaintiff to work allowing the use of a cane for all standing and ambulation with the option to change positions at 60-minute intervals (Tr. 31).  Plaintiff presents no evidence that during the relevant period, the knee condition caused a greater level of limitation (for a 12-month period or longer) than reflected by the RFC.  As such, her implied argument that the newly submitted evidence would be likely to change the ALJ's finding that she was not disabled before April 13, 2017  should be rejected.  42 U.S.C. § 405(g).

Because the RFC composed by the ALJ is well explained, generously supported by the record, and well within the "zone of choice" accorded the administrative fact-finder, the non-disability determination should not be disturbed by this Court.  *Mullen v. Bowen, supra.* Likewise, because the newer evidence is not "material" to the ALJ's determination, a remand for its consideration is not warranted. § 405(g).

## **VI.  CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a  copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 13, 2020                          s/R. Steven Whalen
                                                 R. STEVEN WHALEN
                                                 UNITED STATES MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on January 13, 2020 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants January 13, 2020.

                                                 s/Carolyn M. Ciesla
                                                 Case Manager for the
                                                 Honorable R. Steven Whalen